**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cr-20103-ALTMAN**

**UNITED STATES OF AMERICA**,

*v.*

**ADMET CADYT BENITEZ MONTOYA**,

*Defendant.*
_______________________________________/

## ORDER DENYING MOTION TO DISMISS

Admet Cadyt Benitez Montoya moves to dismiss both counts of the Indictment [ECF No. 1]. *See* Motion to Dismiss (the "Motion") [ECF No. 27].[1] Count I charges him with unlawfully procuring his citizenship or naturalization, in violation of 18 U.S.C. § 1425(a). *See* Indictment at 1. Count II charges him with misusing evidence of his citizenship or naturalization, in violation of 18 U.S.C. § 1423. *See id.* at 2. Montoya advances three arguments. *First*, he says that "the Indictment violates the Double Jeopardy Clause because it constitutes a successive prosecution, based on the same facts on which he was previously convicted[.]" Motion at 6. *Second*, he contends that the Indictment violates his due-process rights because "the Government had all necessary information to prosecute [him] for the offenses stated in the current Indictment, at the time that [he] was [previously] tried." *Ibid. Third*, he claims that "the Indictment is insufficient on its face, because it fails to set forth the essential elements of the offense under 18 U.S.C. § 1425(a)." *Ibid.* After careful review, we **DENY** the Motion.

### THE FACTS

On December 9, 2021, in a prior case in our District, the Government filed an eleven-count superseding indictment against Montoya and eleven co-defendants. *See* Prior Indictment, *United States*

[1] The Motion is now fully briefed and ripe for adjudication. *See* Response [ECF No. 29]; Reply [ECF No. 30].

*v. Sanchez*, 21-cr-20434 (S.D. Fla. Dec. 14, 2021) (Martinez, J.), ECF No. 80 (the "Prior Case"). That Prior Indictment charged Montoya with one count of conspiracy to defraud the United States and to commit marriage fraud, in violation of 18 U.S.C. § 371 (Count I), and five counts of unlawfully encouraging an alien to reside in the United States, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv), (a)(1)(A)(v)(II), and (a)(1)(B)(i) (Counts VII–XI). *See generally ibid.*[2] In a nutshell, the Prior Case "alleged that [Montoya] conspired to defraud the United States, by arranging false marriages between United States Citizens and noncitizens seeking residency." Motion at 6. After a four-day trial, *see* Paperless Trial Minutes, Prior Case, ECF Nos. 192–94, 196, a jury found Montoya guilty of Counts I, VII, and X—and not guilty of Counts VIII, IX, and XI, *see* Jury Verdict, Prior Case, ECF No. 197. On July 6, 2022, Judge Martinez sentenced Montoya to "18 months as to each of Counts 1s, 7s, and 10s of the Superseding Indctment [sic], all such terms to run concurrently." Judgment, Prior Case, ECF No. 228 at 2.

On April 26, 2026, the Government filed this case. Count I charges Montoya with unlawfully procuring citizenship, in violation of 18 U.S.C. § 1425(a), and alleges that, "[f]rom on or about February 1, 2017, through on or about May 18, 2018," Montoya "did knowingly procure and attempt to procure, contrary to law, naturalization, and documentary and other evidence of naturalization and

[2] Count I of the Prior Case alleged that Montoya "and other co-conspirators" recruited U.S. citizens and lawful permanent residents ("LPRs") "to enter into false and fraudulent marriages with Beneficiary aliens[.]" Prior Indictment ¶ 4. The alleged "overt acts" Montoya took in furtherance of the conspiracy included "introduc[ing]" aliens to certain U.S. citizens and LPRs "for the purpose of arranging a false and fraudulent marriage," *id.* ¶¶ 7, 11, 13, 16, 18, 21, 22, 26, 27, and paying these U.S. citizens and LPRs "approximate[ly] $4000" to enter into "false and fraudulent marriage[s]," *id.* ¶¶ 8, 17, 25, 30. The Government alleged a conspiracy spanning from "around April 2015" and "continuing through on or about December 4, 2018," *id.* at 3, with Montoya's first alleged overt act occurring "around September 2017," *id.* ¶ 7. Counts VII–XI alleged that Montoya did "knowingly encourage and induce" (or that he conspired with, and aided and abetted, others who so encouraged and induced) the alien co-Defendants "to reside in the United States, for the purpose of private financial gain, knowing and in reckless disregard of the fact that such residence is and will be in violation of law." *Id.* at 10.

of citizenship, for himself, in violation of" 18 U.S.C. § 1425(a). *See* Indictment at 1. Count II charges Montoya with misusing evidence of citizenship or naturalization, in violation of 18 U.S.C. § 1423, and alleges that, "[o]n or about May 21, 2018," Montoya "did knowingly use for any purpose any certificate, certificate of naturalization, and certificate of citizenship, unlawfully issued and made, and copies and duplicates thereof, showing any person to be naturalized and admitted to be a citizen, in that the defendant submitted as proof of his United States citizenship an unlawfully issued certificate of naturalization[.]" *Id.* at 1–2.

In his Motion, Montoya says that "[t]he current Indictment is premised on allegations that [he] executed an N400, application for naturalization (the 'Application') on February 1, 2017." Motion at 5. "Question number twenty-two (22) on the Application asked: 'have you EVER committed, assisted in committing, or attempting to commit a crime or offense for which you were not arrested?'" *Ibid.* Montoya "answered 'no' to this question and on March 4, 2017, filed the Application with the United States Citizenship and Immigration Services." *Ibid.* After joining the conspiracy for which he was convicted in the Prior Case, *see* Prior Indictment ¶ 7 (alleging that Montoya's first overt act occurred "around September 2017"), Montoya "attended an interview on May 9, 2018 regarding his Application, which was approved the same day," Motion at 5. Then, "on May 18, 2018, [Montoya] swore the oath of citizenship." *Ibid.* In this case, the Government's theory is that, "by arranging the false marriages, [Montoya] was committing an offense for which he 'had not been arrested[.]'" *Ibid.* In the Government's view, then, when Montoya attended his May 9, 2018, interview and swore the oath of citizenship on May 18, 2018, his response to question 22 was false. *See ibid.* ("Question number twenty-two (22) on the Application asked: 'have you EVER committed, assisted in committing, or attempting to commit a crime or offense for which you were not arrested?'" Montoya "answered 'no' to this question[.]"). Through that false answer, the Government says, Montoya "knowingly procure[d]

and attempt[ed] to procure, contrary to law, naturalization," in violation of § 1425(a). Indictment at 1.[3]

## ANALYSIS

### I. Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. "The protection against successive prosecutions is the central protection provided by the Clause." *United States v. Dixon*, 509 U.S. 688, 746 (1993) (Souter, J., concurring). "'Based on the fundamental notion that serial prosecutions by the government are abusive,' the Clause 'protects against a second prosecution for the same offense[.]'" *United States v. McIntosh*, 704 F.3d 894, 900 (11th Cir. 2013) (first quoting *United States v. McIntosh*, 580 F.3d 1222, 1227 (11th Cir. 2009); and then quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

[3] Montoya challenges Count II through his attack on Count I. *See* Motion at 16 ("The allegations in Count II are dependent upon a valid claim in Count I."). But the Government says that Count II arises from Montoya's separate use of his naturalization documents to procure a U.S. passport. *See* Response at 2 ("On or about May 21, 2018, Montoya applied for a United States passport and included his N-550 as proof of citizenship."); *id.* at 7 ("Montoya chose to apply for a United States Passport, using the Certificate of Citizenship that was unlawfully issued and made."). As Montoya sees it, though, "if there is no 'unlawful procurement' of the naturalization documents," as alleged in Count I, "then there can be no 'unlawful use,'" as alleged in Count II. Motion at 16. We agree. Section 1423 makes it illegal to knowingly use "for any purpose any order, certificate, certificate of naturalization, certificate of citizenship, judgment, decree, or exemplification, ***unlawfully issued*** or made, or copies or duplicates thereof, showing any person to be naturalized or admitted to be a citizen." § 1423 (emphasis added). By its plain terms, then, the Defendant could only violate § 1423 if "the Certificate of Citizenship" he used "to apply for a United States Passport," Response at 7, was "unlawfully issued or made," § 1423, in violation of § 1425, *cf. United States v. Chavez*, 2025 WL 3687749, at *3 (11th Cir. Dec. 19, 2025) ("Because the jury had sufficient evidence to find that Chavez procured his U.S. citizenship by making false statements and that Chavez used his naturalization certificate to procure his U.S. passport, the jury also had sufficient evidence to convict Chavez of misusing evidence of naturalization."), *cert. denied*, 2026 WL 2976259 (U.S. Oct. 5, 2026). In other words, if a jury finds that Montoya *isn't* guilty of Count I because his Certificate of Citizenship *wasn't* "unlawfully issued or made" in violation of § 1425, Montoya cannot be found guilty of Count II under § 1423. But that doesn't mean, as we'll explain, that a prosecution under both statutes violates the Double Jeopardy Clause.

In Montoya's view, "the Indictment violates the Double Jeopardy Clause because it constitutes a successive prosecution, based on the same facts on which he was previously convicted in the Prior Case." Motion at 6; *see also id.* at 8 ("The instant Indictment is a subsequent prosecution, based on precisely the same facts"). "Without his commission of the predicate acts," Montoya says, "for which he has been indicted, tried, and convicted in the Prior Case, he could not be prosecuted in this case." *Id.* at 8. Montoya therefore believes that he "is currently being prosecuted in this case for the exact same conduct that he was already indicted, tried, convicted, and for which he served a substantial prison sentence to atone." *Id.* at 8.

The Government doesn't see it that way. "Montoya," it contends, "is not being prosecuted for the same offense." Response at 6. "Previously," it explains, "Montoya participated in a marriage fraud scheme. In a completely different event, constituting a completely independent offense, Montoya, during the time he was committing felonies, decided to apply for citizenship." *Ibid.* Montoya thus "chose to be dishonest with USCIS, under oath, about his criminal activities and thereby procured citizenship or naturalization unlawfully." *Ibid.* Plus, the Government adds, Count II charges a "completely independent offense," in which "Montoya chose to apply for a United States Passport, using the Certificate of Citizenship that was unlawfully issued and made." *Ibid.* We agree with the Government.

"Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense." *United States v. Smith*, 532 F.3d 1125, 1128 (11th Cir. 2008) (quoting *Williams v. Singletary*, 78 F.3d 1510, 1512 (11th Cir. 1996)). "[T]he 'dispositive question' is whether the legislature intended to authorize separate punishments for the crimes." *Fallada v. Dugger*, 819 F.2d 1564, 1572 (11th Cir. 1987) (quoting *Whalen v. United States*, 445 U.S. 684, 688–89 (1980)). "This is so because the 'power to define criminal offenses and to prescribe punishments to be imposed upon those found guilty of them,

resides wholly with the Congress.'" *Albernaz v. United States*, 450 U.S. 333, 344 (1981) (quoting *Whalen*, 445 U.S. at 689). "If the legislative intent is unclear, we apply the 'same elements' test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932)." *United States v. Davis*, 854 F.3d 1276, 1286 (11th Cir. 2017).

Montoya fails at the outset because he hasn't shown that he's being twice prosecuted for "the same conduct[.]" *Smith*, 532 F.3d at 1128.[4] In the Prior Case, after all, Montoya was prosecuted for participating in a marriage-fraud scheme. *See* Motion at 6 (noting that the Prior Case "alleged that [Montoya] conspired to defraud the United States, by arranging false marriages between United States Citizens and noncitizens seeking residency"). Here, by contrast, he's being prosecuted for lying in his citizenship application (Count I) and then using his naturalization document to apply for a U.S. passport (Count II). *See id.* at 5–6 ("The current Indictment is premised on allegations that [Montoya] executed an N400, application for naturalization (the 'Application') on February 1, 2017," and "chose to apply for a United States Passport, using the Certificate of Citizenship that was unlawfully issued and made."). These are three separate crimes: the marriage-fraud scheme (the Prior Case); the lie to procure the naturalization document (Count I of our case); and the use of the naturalization document to obtain a U.S. passport (Count II of our case). Montoya's double-jeopardy claim thus fails because each case (and, indeed, each count in our case) punishes him for separate and independent criminal acts.

But here's the thing: Even if the two cases charged Montoya with the same conduct (they don't), his claim would still fail the *Blockburger* test. "We have recognized that the *Blockburger* test 'is

---

[4] Congress plainly "intended that each violation be a separate offense." *Smith*, 532 F.3d at 1128. And Montoya notably doesn't suggest that Congress meant to prohibit the same conduct when it passed § 371 (the general conspiracy statute), § 1324(a)(1)(A)(iv) (the alien-smuggling statute), and § 1425 (the prohibition against making false statements during a naturalization application). He's thus forfeited any such argument. *See Interactive Commc'ns Int'l, Inc. v. Great Am. Ins. Co.*, 731 F. App'x 929, 935 (11th Cir. 2018) ("We are not obliged to consider arguments not raised by the parties.").

one of statutory interpretation in which we examine the elements of each offense to determine whether Congress intended to authorize cumulative punishments.'" *Davis*, 854 F.3d at 1286 (quoting *United States v. Williams*, 527 F.3d 1235, 1240 (11th Cir. 2008)). "Under that test, two offenses are different for double jeopardy purposes 'if each requires proof of an additional fact which the other does not.'" *Ibid.* (quoting *Smith*, 532 F.3d at 1128 (cleaned up)). In other words, "if an offense requires proof of an element that the other offense does not, we need look no further in determining that the prosecution of both offenses does not offend the Fifth Amendment." *United States v. Hassoun*, 476 F.3d 1181, 1186 (11th Cir. 2007).

Our Count I charges Montoya with violating § 1425(a). *See* § 1425(a) (making it a crime to "knowingly procure[ ], contrary to law, the naturalization of any person"). Where, as here, the government seeks to prove the "contrary to law" element by showing that the defendant made a false statement, "a person violates § 1425(a) if he: (1) knowingly makes; (2) a false statement under oath in a naturalization proceeding (in violation of § 1015(1)); (3) that 'played some role in' (i.e., was material to); (4) the person's procuring naturalization." *United States v. Santos*, 947 F.3d 711, 731 (11th Cir. 2020) (quoting *Maslenjak v. United States*, 582 U.S. 335, 338 (2017)). In a case like ours, in short, the Government must "demonstrat[e] that the defendant lied about facts that would have mattered to an immigration official." *Maslenjak*, 582 U.S. at 338.

By contrast, to establish the charge in Count II of the Prior Case, the government had to prove that Montoya (1) "encourage[d] or induce[d] an alien to come to, enter, or reside in the United States," (2) "knowing or with reckless disregard" of the fact that the alien's "coming to, entry, or residence is or will be in violation of law." § 1324(a)(1)(A)(iv). And Count I of the Prior Case required proof that Montoya conspired with at least one other person "to try to accomplish a common and unlawful plan." Eleventh Circuit Pattern Jury Instructions (O13.1). The "common and unlawful plan" in that case was the conspiracy to commit marriage fraud in violation of § 1324.

As this recitation should make plain, § 1425(a) (Count I of our case) *doesn't* require proof of an agreement to commit marriage fraud or proof that Montoya encouraged an alien's unlawful arrival, entry, or residence. It, in fact, has *nothing* to do with aliens or marriages. And neither § 371 nor § 1324 (the charges at issue in the Prior Case) required proof that Montoya procured naturalization or that he knowingly made a materially false statement in doing so. Since each "offense requires proof of an element that the other offense does not, we need look no further in determining that the prosecution of both offenses does not offend the Fifth Amendment." *Hassoun*, 476 F.3d at 1186.

One last point. Montoya claims that "prosecuting [him] based on the same facts which he was previously tried, clearly violates Double Jeopardy[.]" Motion at 6. In saying so, however, he simply "misapprehend[s] the proper application of the *Blockburger* analysis[.]" *Hassoun*, 476 F.3d at 1186. "Our precedent establishes that when comparing charges under different statutory provisions—such as [Count I of our case and the charges in the Prior Indictment]—we examine only the elements themselves[.]" *Ibid.* "Specifically, we need not examine the facts alleged in the indictment to support the counts nor the 'practical significance' of the theories alleged for each count." *Ibid.*; *see also United States v. Shenberg*, 89 F.3d 1461, 1479 (11th Cir. 1996) (holding that a second prosecution may rely on facts that are "based upon substantive offenses for which the defendant had been convicted"). In the end, we adhere to the "basic, yet important, principle that the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." *United States v. Felix*, 503 U.S. 378, 387 (1992); *see also United States v. Adams*, 1 F.3d 1566, 1574 (11th Cir. 1993) (holding that the double-jeopardy analysis is "applied to the statutory elements underlying each indictment, or count, not to the averments that go beyond the statutory elements"); *United States v. Boldin*, 772 F.2d 719, 726 (11th Cir. 1985) ("[A] substantial overlap in the proof offered to establish the crimes is not a double jeopardy bar."); *United States v. Mulherin*, 710 F.2d 731, 740 (11th Cir. 1983)

("That much of the same evidence served 'double duty' in proving the two [conspiracy] offenses charged is of no consequence").

We, in short, **DENY** Montoya's double-jeopardy claim.

**II. Due Process**

Montoya next argues that the delay in this prosecution "offends the Fifth Amendment's due process clause" because he "expended significant time and funds defending against [the Prior Case] at trial" and "must now again defend against the allegations," because he "will be subject to increased penalties if he is convicted due to his conviction in the Prior Case," and because "there is no good reason that the Government should have delayed filing, or that justifies the delay in this case." Motion at 9–10. "The Government," he insists, "had all the facts and circumstances necessary to include the offenses at issue in this Indictment, in the Prior Case," and he speculates that the "only explanation" for the Government's decision to separate the two cases was the Government's interest in gaining a "tactical advantage." *Id.* at 11. This claim is frivolous.

"The limit on pre-indictment delay is usually set by the statute of limitations." *United States v. Foxman*, 87 F.3d 1220, 1222 (11th Cir. 1996). And there's no dispute that the Government brought this prosecution well within the ten-year statute of limitations that applies under §§ 1425(a) and 1423. *See* § 3291 ("No person shall be prosecuted, tried, or punished for violation of any provision of sections 1423 to 1428 . . . or for conspiracy to violate any such sections, unless the indictment is found or the information is instituted within ten years after the commission of the offense."). After all, Montoya allegedly committed the crimes he's been charged with here in 2017 and 2018, and he was indicted for those offenses in 2026. *See* Indictment at 1 (alleging that the Defendant committed the crime charged in Count I "[f]rom on or about February 1, 2017, through on or about May 18, 2018"); *id.* at 2 (alleging that the Defendant committed the crime charged in Count II "[o]n or about May 21, 2018").

True, "the Due Process Clause can bar an indictment even when the indictment is brought within the limitations period," *Foxman*, 87 F.3d at 1222, but only if he can show two things: *first*, that the delay caused him "actual substantial prejudice," *ibid.*, "not merely the real possibility of prejudice inherent in any extended delay," *Stoner v. Graddick*, 751 F.2d 1535, 1544 (11th Cir. 1985); and *second*, that "the delay was the product of a deliberate act by the government designed to gain a tactical advantage," *Foxman*, 87 F.3d at 1222; *see also United States v. Solomon*, 686 F.2d 863, 871 (11th Cir. 1982) (observing that, while the Eleventh Circuit recognizes the existence of a due-process claim based on pre-indictment delay, "the Court has always either found the threshold prejudice requirement unsatisfied or examined the prosecutor's reasons for the delay and approved them. . . . The defendant has cited no case, and we have found none in this circuit, in which it was met."). Here, the "actual substantial prejudice" Montoya points to is the "significant time and funds" he spent defending the Prior Case and the fact that he may "be subject to increased penalties if he is convicted[.]" Motion at 10. But those aren't valid reasons to dismiss an indictment.[5] The Government may charge a defendant

[5] "Actual prejudice" generally refers to, for instance, delays that cause a defense witness or evidence to be lost. *See, e.g.*, *United States v. Mills*, 704 F.2d 1553, 1557 (11th Cir. 1983) (finding that the death of a witness who had confessed to the murder the defendant was charged with was "genuinely prejudicial" to the defendant's case); *United States v. Corbin*, 734 F.2d 643, 648 (11th Cir. 1984) ("The death of witnesses during the preindictment period on the other hand may demonstrate the requisite prejudice, provided that the defendants are able to demonstrate that the evidence thereby lost could not be obtained through other means." (citing *United States v. Lindstrom*, 698 F.2d 1154, 1158 (11th Cir. 1983) (finding that "the deaths of two witnesses" who were at the center of the mail-fraud scheme constituted actual prejudice))); *Foxman*, 87 F.3d at 1222–23 ("Given the number of Foxman's best witnesses who died between 1983 and 1993 (and that the statute of limitations for substantive charges against Foxman expired in 1988), we cannot say the district judge was clearly wrong" in finding actual prejudice); *cf. United States v. Willis*, 583 F.2d 203, 208 (5th Cir. 1978) (rejecting the defendant's "general allegation that through the loss of his personal records and the records of ECS, he has suffered undue harm to his defense"); *United States v. Benson*, 846 F.2d 1338, 1341 (11th Cir. 1988) (considering the loss of a photograph depicting the defendant "as the man from whom [a witness] had received the heroin she was smuggling," the loss of "artifact" documents that "corroborate[d] [the defendant's] exculpatory statements concerning the heroin filled statues," and the loss of two witnesses who "would testify to his presence at the [Los Angeles Islamic Center] during the entire month" in which he was smuggling heroin and finding that, while the defendant "certainly was prejudiced by the government's delay in indicting him in this case[,] . . . the prejudice does not rise to constitutional

if it has "probable cause to believe that the accused committed an offense defined by statute." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). "Under the Due Process Clause," to be sure, "a criminal defendant has the right to defend himself against criminal charges." *United States v. Ben-Ari*, 537 F. App'x 828, 831 (11th Cir. 2013). But "[a] person who has committed a crime may expect to be prosecuted and has no right to avoid prosecution until after the statute of limitations has expired." *United States v. Weinlein*, 109 F.4th 91, 102 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1425 (2025). Or, as the D.C. Circuit has put it, "a guilty person has no right not to be charged with a criminal offense." *United States v. Bland*, 472 F.2d 1329, 1348 (D.C. Cir. 1972). Montoya notably cites no case—and we have found none—for the absurd proposition that a guilty person who committed two separate crimes can avoid prosecution for the second simply because he had to pay a lawyer to defend him against the first. And while Montoya may ask this Court, at sentencing, to account for the fact that, had he been prosecuted for all the crimes simultaneously, he would've received a lower sentence (presumably because he would've retained a criminal history category of I under the Guidelines), that too isn't a reason to dismiss the indictment. *See Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984) (rejecting the defendant's argument that "the government's delay of over a year and a half between the time it could have indicted [the defendant] and the time it actually did, violated defendant's due process rights" and holding that "the prejudice alleged by defendant—that his opportunity to be sentenced on the securities charge concurrently with the escape charge—is at best speculative, not actual").

---

proportions"). Even then, however, the defendant "must show that the loss impaired his ability to provide a meaningful defense." *Stoner*, 751 F.2d at 1544; *see also Jackson v. Benton*, 315 F. App'x 788, 791 (11th Cir. 2009) ("Moreover, the prejudice must rise to constitutional proportions in order to support dismissal. This court has recognized that the standard is an exceedingly high one." (cleaned up)). Montoya hasn't even tried to make this kind of showing here.

In any event, Montoya has no evidence for his speculative claim that the Government purposefully delayed the prosecution of his second case to gain some tactical advantage. He, in fact, doesn't even really articulate what that tactical advantage might be. And a criminal defendant cannot meet his "heavy burden" of establishing a due-process violation by relying on speculation. *See Stoner*, 751 F.2d at 1546 ("Stoner asserts a general claim that the passage of time dimmed the witnesses' recall. This sort of speculative assertion does not meet the actual prejudice standard."); *United States v. McGough*, 510 F.2d 598, 604 (5th Cir. 1975) ("In *Marion*, the Supreme Court made it clear that when pre-indictment delay is asserted, actual prejudice and not merely 'the real possibility of prejudice inherent in any extended delay,' must be demonstrated." (quoting *United States v. Marion*, 404 U.S. 307, 326 (1971))); *United States v. McCoy*, 977 F.2d 706, 711 (1st Cir. 1992) ("[T]o carry the heavy burden of proving actual prejudice from pre-indictment delay, concrete proof is required; mere speculation and bare allegations will not suffice."); *United States v. Young*, 906 F.2d 615, 620 (11th Cir. 1990) ("[C]onclusory allegations of prejudice are insufficient to establish actual prejudice."). We therefore **DENY** Montoya's due-process claim.

### III. The Indictment

Finally, Montoya "submits that the Indictment must be dismissed because it does not set forth the essential elements required by law." Motion at 12. Specifically, Montoya says that Count I omits the necessary element of "materiality." *Ibid.* As we've said, Count I alleges that Montoya "did knowingly procure and attempt to procure, contrary to law, naturalization, and documentary and other evidence of naturalization and of citizenship, for himself," in violation of § 1425(a). Montoya correctly observes that "[t]he United States Supreme Court has held that the 'contrary to law' element set forth in § 1425(a) 'requires not only that the defendant committed some illegal act in the course of procuring naturalization, but that the defendant's illegal act played some role in the acquisition of

naturalization.'" Motion at 13 (quoting *Santos*, 947 F.3d at 730 (cleaned up)). Although this one is a much closer call, upon careful review, we reject Montoya's challenge.

"Constitutional requirements are fulfilled 'by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime.'" *United States v. Critzer*, 951 F.2d 306, 308 (11th Cir. 1992) (quoting *United States v. Yonn*, 702 F.2d 1341, 1348 (11th Cir.), *cert. denied*, 464 U.S. 917 (1983)). In determining whether an indictment includes each element of an offense, we give the indictment "a common sense construction," *United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009), and don't ask whether the indictment "could have been drafted with more clarity," *United States v. Leonard*, 4 F.4th 1134, 1143 (11th Cir. 2021).

The indictment in our case tracks the statutory language. *Compare* Indictment at 1 (alleging that Montoya "did knowingly procure and attempt to procure, contrary to law, naturalization, and documentary and other evidence of naturalization and of citizenship, for himself, in violation of Title 18, United States Code, Section 1425(a)"), *with* § 1425(a) ("Whoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship . . . ."). Montoya doesn't disagree with this. Instead, he says that the "[t]he Eleventh Circuit and the United States Supreme Court have specifically held that materiality is an element of the offense"—and (he continues) our indictment doesn't refer to that element. Motion at 15. Here, Montoya gets things kind of right. In *Maslenjak*, the Supreme Court described § 1425(a) this way:

> So to "procure . . . naturalization" means to obtain naturalization (or, to use another word, citizenship). The adverbial phrase "contrary to law," wedged in between "procure" and "naturalization," then specifies *how* a person must procure naturalization so as to run afoul of the statute: in contravention of the law—or, in a word, illegally. Putting the pieces together, someone "procure[s], contrary to law, naturalization" when she obtains citizenship illegally.
>
> What, then, does that whole phrase mean? The most natural understanding is that the illegal act must have somehow contributed to the obtaining of citizenship. . . . If whatever illegal conduct occurring within the naturalization process was a causal dead-

> end—if, so to speak, the ripples from that act could not have reached the decision to award citizenship—then the act cannot support a charge that the applicant obtained naturalization illegally. The conduct, though itself illegal, would not also make the obtaining of citizenship so. To get citizenship unlawfully, we understand, is to get it through an unlawful means—and that is just to say that an illegality played some role in its acquisition.

*Maslenjak*, 582 U.S. at 341–42 (quoting § 1425(a)); *see also id.* at 338 ("We hold that the Government must establish that an illegal act by the defendant played some role in her acquisition of citizenship."). "When the illegal act is a false statement," the Court added, "that means demonstrating that the defendant lied about facts that would have mattered to an immigration official, because they would have justified denying naturalization or would predictably have led to other facts warranting that result." *Id.* at 338.

This all makes sense. But it doesn't mean "materiality is an ***element*** of the offense." Motion at 15 (emphasis added). Instead, as *Maslenjak* made clear, § 1425(a) requires proof *only* of the following elements: (1) that the defendant "knowingly procures or attempts to procure, [(2)] contrary to law, [(3)] the naturalization of any person[.]" § 1425(a). To prove these elements, "the Government must establish that an illegal act by the defendant played some role in her acquisition of citizenship." *Maslenjak*, 582 U.S. at 338. Far from suggesting that materiality is a separate *element* of the offense, then, the Supreme Court was simply defining the interplay between the various elements as requiring proof that the defendant's lie "mattered" to immigration officials. Put another way, to show that the defendant's actions were "contrary to law"—an element of the offense—the government must prove that the defendant's lie "mattered," meaning that the mattered-to requirement is just the "contrary to law" element's *definition*.

Applying this aspect of *Maslenjak*'s holding in *Santos*, the Eleventh Circuit observed that "the government's trial evidence was insufficient to prove beyond a reasonable doubt . . . that [the defendant's] false statements were 'material' to his procuring naturalization." 947 F.3d at 731. Again, however, the Circuit wasn't adding a separate element to the offense: It was simply applying the

definition of the "contrary to law" element the Supreme Court had given in *Maslenjak*. Indeed, as in *Maslenjak*, the *Santos* Panel explained that, to satisfy the *elements* of § 1425(a), the government must show only the following: (1) that the defendant "knowingly procures or attempts to procure, [(2)] contrary to law, [(3)] the naturalization of any person[.]" § 1425(a). In outlining what these elements *mean*, the panel said this:

> In *Maslenjak*, the Supreme Court held that § 1425(a)'s "contrary to law" element requires not only that the defendant committed some illegal act in the course of procuring naturalization, but that the defendant's illegal act "played some role in" the acquisition of naturalization. "When the government claims that the defendant procured naturalization illegally by making a false statement under oath in a naturalization proceeding, in violation of 18 U.S.C. § 1015(1), the government must "demonstrate that the defendant lied about facts that would have mattered to an immigration official, because they would have justified denying naturalization or would predictably have led to other facts warranting that result." In other words, the materiality of the false statement is an element of the offense.

*Ibid.* (emphasis added) (first quoting §1425(a); and then quoting *Maslenjak*, 582 U.S. at 338).

Montoya makes much of this last sentence from *Santos* and argues that it added a new element Congress had not included in the offense. We don't think that's right. "A judicial opinion is not a statute, and not every sentence in a judicial opinion is law." *Dantzler v. I.R.S.*, 183 F.3d 1247, 1251 (11th Cir. 1999). So, "the language of an opinion is not always to be parsed as though we were dealing with language of a statute." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979). Rather, "opinions dispose of discrete cases and controversies and they must be read with a careful eye to context." *Nat'l Pork Prods. Council v. Ross*, 598 U.S. 356, 373–74 (2023). For two reasons, we think Montoya overreads *Santos*.

The issue in *Maslenjak* was that "the District Court told the jury that it could convict based on any false statement in the naturalization process[,] . . . no matter how inconsequential to the ultimate decision." *Maslenjak*, 582 U.S. at 352. That was wrong because § 1425(a), "most naturally read, strips a person of citizenship not when she committed any illegal act during the naturalization process, but only when that act played some role in her naturalization." *Id.* at 346. "In false statement cases, then,

the statute essentially imposes the familiar materiality requirement that applies in other contexts. That is, a person violates the statute by procuring naturalization through an illegal false statement which has a natural tendency to influence the outcome—that is, the obtaining of naturalization. . . . [T]he statute applies when a person makes an illegal false statement to obtain naturalization, and that false statement is material to the outcome." *Id.* at 355 (Alito, J., concurring) (cleaned up). "So the issue a jury must decide in a case like this one is whether a false statement sufficiently altered those processes as to have influenced an award of citizenship." *Id.* at 347. Materiality, in other words, is what it means to say that the defendant's false statement was "contrary to law"—*i.e.*, that it *illegally* caused the immigration official to award him the naturalization he was after.

And this is what the Eleventh Circuit made clear in *Santos*, where it held that "a person violates § 1425(a) if he: (1) knowingly makes; (2) a false statement under oath in a naturalization proceeding (in violation of § 1015(1)); (3) that 'played some role in' (*i.e.*, was material to); (4) the person's procuring naturalization." *Santos*, 947 F.3d at 731 (quoting *Maslenjak*, 582 U.S. at 347). In describing the charge's elements here, the Eleventh Circuit simply replaced the "contrary to law" element with its definition: materiality. But that doesn't mean materiality is a *separate element* from "contrary to law": It only means that "contrary to law" means "material." Since our indictment already includes the "contrary to law" element as it appears in the statute—and since our jury instructions will define that element to mean that the statement must have been material—we don't think the Government needs to add to (or change) the wording of the statute in a new indictment.[6]

[6] Even if materiality were a separate element of the offense, it's not clear that, in our Circuit at least, its omission would necessarily matter here. In *United States v. Fern*, 155 F.3d 1318, 1325–26 (11th Cir. 1998), the indictment alleged that the defendant "did knowingly make false statements" on a required form, in violation of § 7413(c)(2). But the relevant statute made it illegal to utter "any false ***material*** statement, representation, or certification" in a required document. 42 U.S.C. § 7413(c)(2)(A) (emphasis added). Although the indictment omitted the word "material," the Eleventh Circuit rejected the defendant's challenge because the indictment's statutory reference and other factual allegations made it "a reasonable inference that the grand jury found" the alleged false statements were "material."

In sum, "the materiality of the false statement" is a prong of § 1425(a)'s "contrary to law" element—not a separate element of the offense. Because the Indictment alleges that Montoya "knowingly procure[d] and attempt[ed] to procure, ***contrary to law***, naturalization," Indictment at 1 (emphasis added), it sufficiently "sets forth the essential elements of the crime," *Critzer*, 951 F.2d at 308 (citations omitted).

## CONCLUSION

After careful review, therefore, we **DENY** Montoya's Motion to Dismiss [ECF No. 27].

**DONE AND ORDERED** in the Southern District of Florida on November 12, 2026.



**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

*Id.* at 1326. In saying so, the court explained that "practical, rather than technical considerations govern the validity of the indictment." *Ibid.* (quoting *United States v. Stefan*, 784 F.2d 1093, 1102 (11th Cir. 1986)). So too here. Our jury instructions will make clear to the jury that "contrary to law" means material—in other words, that the lie "mattered" to the immigration official's ultimate decision to issue the document.